What the applicant designated as needing repair, the city wants to make sure those are conditions that do need repair, and also the city will find other conditions that should be or are mandated to be repaired with this money. So I think under a traditional duty analysis, there would be no duty. There's no direct relationship between the city and the plaintiff, Mr. Harreld. But beyond that, we don't really talk about traditional duty in this case because Elgin is a public entity, so the duty that would apply here is the public duty rule. And under that public duty rule, or under that rule, the city owes no direct duty to the plaintiff and therefore to the third-party plaintiff for conditions with respect to this property. I think the case there that's directly on point is the Ware case because there you had people that were out on a porch in the city of Chicago. The porch had been inspected by city inspectors. It had passed the inspection, but unfortunately on this occasion when there were people out on the porch, it collapsed and they were injured. They sued the city. And the Ware court said actually two things, that number one, there was no special duty owed by the city to these people that were out on the porch because there was the city owed this. In conducting the inspection, the city owed the duty to the public in general, not to the people that are on the porch. And secondly, the court held, it was a first district case, that even if there were a duty, section 2-105 would apply because this was clearly an inspection. And I think the Ware case is directly on point for the two issues we're talking about here. When Elgin goes out to inspect, evaluate, do whatever they do, or whatever we're going to call it, upon application of Mr. Butler, are they engaging in that same type of relationship? It's for the public as opposed to Mr. Butler. I think if you look at the record in the case, in this case, again, it really comes down to the five pages in the appendix of the appellant's brief. And that is the agreement and the cover letter. The agreement outlines and defines really what the city's role or responsibility is. And if you look at that, it talks about the city basically not funding the program, but ensuring that the funds are spent appropriately for low-income households, as may be designated by the Department of Housing and Urban Development, to rehabilitate the structure so the structure is in compliance with the city's property maintenance code. So I think what the city is doing when it goes out there, at page 861 is what I'm reading from of the appellant's appendix, the city is ensuring that the home is a structure that complies with Section 8. And what they're inspecting is to find conditions that may not be in compliance with the city's property maintenance code. And those will be the ones that I think what was designated here on the cover letter as conditions such as the roof that will need to be repaired if these funds are going to be allocated for this applicant. But there's nothing in the program, and at least the parts of the program we have here, which is in the pleadings and the appendix, and it's the letter and the agreement. There's nothing in there that suggests the city is conducting a safety inspection when it is doing this inspection, or that it has any responsibility for safety on the project. I think what's clear from this agreement is that the city is inspecting for the purpose of finding conditions that will need to be brought up to code if the applicant is going to be granted the funds for their purpose. And up to, I mean, it's limited to up to code, isn't it? If you look at the agreement, yes, and it's at specifically page 61 of the appendix, it's the third whereas clause. The owner shall retain the services of a contractor, and then there's some parentheses, to rehabilitate the structure so that the structure is in compliance with the city's property maintenance code. So I think from that, you can infer that the purpose the city sees this program is to obtain these federal funds for the purpose of upgrading code. Now, some of those code violations may not have anything to do with safety. They may be purely aesthetic, but the point is what prevails here, I think, is the code, the property maintenance code, and that's what the city is looking at. Now, how unique? Council has made a point that this is a very unique program. I mean, maybe it's unique because Elgin saw the blurb on the Internet and applied for the grant and got it, but, I mean, does it change the role of the city of Elgin because they're doing this with these funds? I don't think that this takes Elgin outside of the realm of its traditional governmental function in basically ensuring that public funds are being spent properly. I mean, this is, again, this is in the record in the appendix. This is a federal program. These are federal funds that the city has joined or applied to be a part of so that its residents can apply. But this is federal money, and I think that there's no, I wouldn't say no, but there's certainly one of the critical functions of a governmental entity is to ensure the proper expenditure of governmental funds, and that's all they're doing here. They're not, when you compare this to the cases where the court have found that governmental entities are outside of their governmental capacity or engaging in proprietary or private functions, the case that comes to mind, really one of the only cases out there, is the Camastro case versus Rosemont. And there, Rosemont was operating a stadium or a facility for a profit where they had entertainment and other shows, but the city was making money off that. Now, that is not, I would suggest, a typical governmental role or function. And making money in excess of the taxes that were garnered from that activity. Right, and here, the city, there's nothing in the record here that the city is benefiting in any way other than to have the benefit of properties in its boundaries being upgraded and whatever aesthetic or safety benefits that may have. That's the only benefit the city is getting. But it's the residents that are benefiting, and the city is in the role of administering federal money. Would you agree that the city's involvement in this case is greater than that in where? It's different. I mean, greater in the sense that it is involved in a specific program and where you're just having a typical inspection. Here, yes, this is an inspection that is part of a program. But, again, if you look under 2105, there's no exception under 2105 for, well, you only have this immunity for inspections where those inspections are conducted as part of a routine inspection to see that the property complies with your building code. I think the language of 2105 is absolute, and this court has been very clear going all the way back to West v. Kirkham that we're not to read exceptions or additional language into these immunities. 2105 is very clear that it provides an immunity for inspections conducted by a municipality, not inspections only as part of the municipal code and not part of any federal-funded program. This is an inspection that was pursuant to that federal program. But I don't think it should take the city out of the realm of enjoying the benefit of that immunity, especially where I think the city is really not gaining anything in a program like this for itself. I think this is clearly for the benefit of its residents. And to deprive the municipality of the benefit of this inspection immunity because they have chosen to adopt or accept this HUD program for the benefit of its residents, I think would be unfair. But also it would be contrary to the plain language of 2105, which doesn't have any exceptions for conduct like this. I think when we're talking about a municipality stepping outside of its governmental function, that's the duty question. The public duty only applies when a municipality is acting within its role as a government and performing activities that are traditionally governmental. And I think inspecting a property to determine that it complies with or that the work that's going to be done there is going to comply with the terms of a program I think is a governmental function, especially when the money being used in that program is purely public funding. And unless you have any more questions, I think I'm going to stop. Thank you. Just briefly, your honors, to try to further distinguish this current circumstances from where an application of section 105. For example, if the city accepted Mr. Butler's application, came out and did the evaluation and found that it was not, his roof wasn't in compliance with a particular code, but then for some reason Mr. Butler didn't meet the agreement and he was no longer in the program, or if for some reason he just didn't pursue the program and he on his own then went out and repaired the roofs and Mr. Harold fell through, then I believe the situation would be analogous to where and the city may be protected under 105. However, in this situation, there was a special relationship built in connection with this program and it was not a situation where the roof was being inspected solely for a code violation. It was being inspected for applicability or acceptance into the program, which the city undertook as involuntary in nature. How was that special relationship pled? Because I thought that was the basis of the 615 ruling. The special relationship was pled in the fact that the, when read as a whole and the allegations being given a liberal construction, was pled with the fact that Mr. Butler was accepted into the program and the city dictated which contractors Mr. Butler had to choose from. So the special relationship was with Mr. Butler? Well, the special relationship then, Mr. Butler was accepted into the program, but once the city dictated the contractors that were chosen, the contractors then had a special relationship with the city. Well, Mr. Harold wasn't even, he was just doing an estimate at that time. He wasn't even part of the program at the time this happened. He was preparing an estimate for DVBC, right? But DVBC was one of the approved contractors and because DVBC was not a roofing contractor, it had the liberty to subcontract with the appropriate person. And while Mr. Butler chose DVBC as his contractor, there still wasn't, was there a signed contract then with DVBC and Mr. Butler or was that still at issue because they were still trying to make sure they could be within the budget? I mean. Honestly, I don't know that. Because it didn't get to that point? Right. I don't know that. All right. So if there's no other questions, I stand on our opening and reply for this. Thank you. Thank you. Thank you, counsel, for your arguments today. We appreciate your time and we appreciate the argument. We will render a decision in due course and we will now stand adjourned. Your Honor, this case on the docket 2-15-0316, DVBC Incorporated, third-party plaintiff's complaint against the city of Belgium, DVBC roofing and signing of Illinois Incorporated, against any time roofing and signing of Illinois Incorporated, third-party defendant's affidavits. Defendant on behalf of the plaintiff's client, attorney Ms. Lina Soni. Defendant on behalf of the defendant at the meeting, attorney Mr. James, held the honor. Ms. Soni. Good morning, Your Honor. Good morning. May it please the court, counsel. My name is Lina Soni. I'm an attorney for DVBC, the appellant in this case. I just want to get to the heart of the argument. This case falls outside even the broad confines of the public duty rule. There are no cases, no authorities cited in either briefs that square with the facts of this case. That is, immunities and protections allowed to a municipality who is administrating a rehabilitation program for residences to private individuals. In fact, the public duty rule, the Supreme Court in Zimmerman and Huey emphasized that the public duty rule is a form of protection from liability for traditional government functions such as police and fire protection. The case of Ware even said that the public duty rule is incorporated under the Tort Immunity Act with respect to police protection. Here, traditional governmental functions are not at issue. Well, isn't there an ordinance or some sort of city authority that they have put in place to clean up sort of the neighborhoods or help people who need help with these federal funds? So, aren't they engaging in a regular function when they do that authority and then go forward to enforce that authority? They are engaging in a type of governmental function, but it's not the type of governmental function anticipated by the immunities protected. In particular, I know that counsel tried or counsel in his briefs indicated that in this case, you know, the city wasn't making any profit. However, the city also is not extending out its coffers from the city of Belgium residents that may be paying taxes. Rather, these are funds earmarked for residences to be repaired and even upgraded, as the city said in its brief. So, this is a situation where, of course, it's for the benefit of the entire city to beautify it, to make sure that people are living in proper homes. But this isn't a program that's mandated or even, you know, potentially offered by every city. This is a unique situation where an applicant, a private individual, has to apply for the benefit. That application is then reviewed by the city and whatever determinations it makes for the acceptance of that application. Unfortunately, we weren't able to get that far into discovery to determine why in particular Mr. Butler's residence was accepted into the program. But didn't the city of Belgium get these funds that are earmarked, there's no question they're earmarked, because they were a municipal entity or they were an entity that could, that had a neighborhood or neighborhoods that needed to be rehabilitated and that they had an obligation to their population to assist in that in any way possible and so they applied for these grants. And they then enacted some sort of regulation, I think it was an ordinance, to cover this particular project. So it's, a lot of cities don't do it, but why would it not be covered by the traditional tort immunity? Well, okay, for, with respect to the actual tort immunity section about inspections, I would submit that the, there was a lot of argument in the briefs about the meaning of inspection versus evaluation. Putting that aside, the section 102 of the Tort Immunity Act, under which the city is claiming immunity, we have to look beyond the word inspection and look at the purpose of that immunity. The purpose of the inspection that establishes the immunity is to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety. It's arguable that in this situation, this is not a situation where an adjoining landowner, for instance, calls in because they're concerned that a porch isn't in compliance with ordinances and that it may fall and injure people. This evaluation, or as the city refers to it, inspection, was done with the particular purpose of extending funds to a particular individual. It then controlled that evaluation process. It controlled the terms of the rehab program so that the evaluation was not for the purposes of complying with the ordinance. It was for the purpose of determining whether this particular home would fall within the confines of the rehab program. Wasn't the program an enactment? The program was an enactment. So if the program was an enactment, then checking to see whether the port, whether this house would comply with that or would qualify for that, would be an inspection to determine whether it's pursuant to an enactment, correct? It's pursuant to an enactment, but it's not for the purposes of determining whether the property complies or violates or constitutes a hazard. It was for the purposes of determining whether the house would qualify for the program. But why does that make a difference? As long as it's, isn't this a governmental function? Because say, for example, if, the government wouldn't be extending that function if the program wasn't in existence. They wouldn't be going to Mr. Butler's home and just arbitrarily checking his roof to see that it, whether it's up to code and whether it needed repairs or upgrades. Would he call them there? He applied pursuant to the city's invitation. Sure, so let me ask you this, if I just call the city up and say, you know, my roof doesn't look too good, I want to make sure that I don't get in trouble, so I'm preemptively going to call you and ask you to inspect my roof to see if it complies with the code. Would that be covered? Well, I guess it would depend on the circumstances. I don't think that, I mean, I think that the purpose of this enactment was inspections so that the city can then dole out fines or make sure that the property owner expends funds or make sure that his property is up to code. In this situation, that wasn't being, it wasn't a matter of enforcement. It was a matter of an opportunity given to this individual. But do you think that if this house was completely up to code that they would have accepted the house into the program? No, I don't think that, and unfortunately, like I said, because we were at the pleading stage, we weren't given the opportunity to discover the exact purpose of the program, how the home was evaluated, what happened when the evaluator went up to the roof and the extent of his or her findings as to the dangers of the roof at the time of that inspection versus Mr. Harold's inspection. Let me ask you this, because the form at C-346 that is used here, it says inspection form. I mean, on the back, it doesn't say evaluation form, it says inspection form. And there's a box checked, and it's the garage, and it says, is the roof in good repair? And apparently it's not because that box is checked. And then it has a notation, PM 303.7. Do you know what that is? 303.7? It must be a code regarding the... It corresponds with the International Property Maintenance Code, which I'm going to assume that Elgin has adopted, regarding roofs. So, I mean, isn't that an inspection to determine whether something complies with the code and with this program? I mean, I can see how that argument can be made. The distinction in this case needs to be made. I mean, of course, the program is for low-income residents to be given the opportunity to make sure that their residences are up to code, compliant, and safe. So, in addition to... I mean, this is why this case is distinct from where. Where the city wasn't found negligent for its inspections with regard to porch collapses. Because they were particularly, when they had done those inspections, they were particularly looking at whether there were code violations and failure to warn. In this case, it wasn't... The city initiated the opportunity where it wasn't... It's distinct in the fact that it was a program that was voluntarily undertaken by the city. Because they're also looking at code violations, should not make it immune under this provision. In fact, doing so would have a chilling effect on these kind of programs. Contractors wouldn't want to work with the city if they're not going to be able to rely on the city for some protection. Well, they're not working with the city. They also volunteered and were vetted as potential contractors. But the city just... The city wasn't supervising how they did the work. They just took a list of contractors that they felt probably had the financial wherewithal to do this and to not fall behind and to do the actual work. And so we have volunteers on that side, too. DVBC volunteered to be in this program. DVBC volunteered to be in this program. The city vetted them. They put them on the list of approved contractors. Those were the contractors that were to be selected. The agreement between Mr. Butler and the city is a written agreement. The city sets forth what's required not only to be accepted into the program, but to stay in the program. As to Mr. Butler, they accepted DVBC into the program, but is there anything that indicates that they were there to specifically supervise DVBC or any subcontractor that they chose? Well, then, there's nothing in the agreement that indicates these directly, that we will be responsible, we will be at the site every day. But it is, I mean, it is like a general contractor. The city was acting like a general contractor. And they have to have some responsibility for the contractors that work under them. Although they were not at the site, general contractors are not at the site every day. But they are responsible for, they dictate the terms, they dictate how long it will take. The city even dictated that the money would have to be given back if they were not, if the contractors were not compliant with the program. So, it's not, even though it's not expressed in the agreement, the city has to have some responsibility in this particular situation. They had a special duty, special duty doctrine is invoked here because they had unique knowledge of the disrepair of the roof. And unique knowledge isn't a matter of experience or whether the city knew more versus whether Mr. Harreld knew more, it's actual notice. And they had actual notice of the disrepair of the roof. But if Mr. Harreld went to check that, he also had that, he had access to that information because DVBC apparently had access to that information and knew they weren't roofers. Right, DVBC had access to the information, but it's unclear from the record before us at the pleading stage what the city knew about the disrepair of the roof at the time its evaluation was performed. What was then passed on to DVBC, which was then passed on to Mr. Harreld. And there are, I mean, potentially precautions that the city could have taken at the time of its evaluation. I mean, if their evaluation indicated that the roof was in such disrepair that someone potentially could fall through it, perhaps they should have roped off that section of the roof. So that a contractor that they were then allowing under the program to go and repair the roof would know that they can't reach that area. And in fact, according to the facts present on the record right now, Mr. Butler wasn't at the residence at the time Mr. Harreld visited the roof. Go ahead. You start talking about the special duty doctrine. Would you agree, though, that if in fact immunity applies, the special duty doctrine is irrelevant? Yes, I would agree. You said something at the outset of your argument that the public duty rule in this case did not apply. I mean, maybe I missed it. I mean, your briefs talk about the special duty doctrine and the corporate function doctrine as exceptions to the public duty rule. I don't remember seeing that you argued that the public duty rule was not applying. Well, my comment about the public duty rule not applying is that it was simply to state that the courts have recognized it as a protection in traditional government functions such as police and fire functions. And I briefly stated that in my brief, but that is the purpose. And I stand on my brief that the special duty doctrine does apply in this case. Thank you. We'll have an opportunity for response. Okay. Mr. Diano, please. Good morning. May it please the court. My name is Jim Diano. I represent the city of Elgin in this case. We believe that the trial court was correct in its analysis and its ruling on both the duty issue and the immunity issue. First of all, under the public duty rule, the court found that there was no duty extending from the city to the plaintiff, Mr. Butler in this case, or Mr. Harold in this case, because of the public duty rule. The city in this case would owe a duty generally to the community as a whole, not specifically to Mr. Harold. And secondly, the court found that under Section 2-105 of the Tort Immunity Act, even if there were a duty, the immunity would overcome the duty and even a breach of that duty. And for public policy reasons, there would be no liability because this was an inspection. Since this was at the pleading stage, was there even any pleading concerning a special relationship? The pleading in this case cites or makes an exhibit the program, the agreement between the city and the homeowner, Mr. Butler. And I think it's that document that's really the heart of the case that explains what the city's role was in this case and what its relationship was to the plaintiff, Mr. Harold. And under that agreement, it shows that the city is basically an administrator of a HUD program. HUD makes these funds available, but the city is responsible for ensuring that those funds are spent appropriately, that the city goes out and makes sure that this is a qualifying Section 8 home. And this is in the agreement which is in the appellant's appendix, I think it's page 60-64. And the agreement, I think, clearly shows that what the city is doing is, number one, ensuring that the applicant is a proper qualified applicant under Section 8, that they qualify there. And secondly, that the repairs or rehabilitation that's needed is actually necessary. Do the repairs need to be tantamount to violations or are they otherwise defined in the relationship? I think what the city does when it goes out is looks for conditions of the residents that are not up to code. And it will cite those as situations or conditions that should be rehabilitated or repaired with this funding. And I think that's what the city does. And to do that, it conducts an inspection. It goes out and looks at the house and says, okay, you're not going to get this money to build a swimming pool, but perhaps you'll get this money to correct your fence or your roof. But it doesn't act as a general contractor. It still relies on the contractors to know what they are doing when they go out and inspect the home for the purpose of submitting their estimates. Because the program does require that the contractors both be qualified and that they submit estimates that are approved. When the contractors apply, in particular DDBC, do they receive some rules and regulations of this program or notice of those rules and regulations? We didn't get that far in terms of the discovery in this case because it was dismissed at the pleading stage. So anything I say would be outside the record. But I think you can infer from the fact that this is a federal program and that these are public funds, that they're going to ensure that the contractors that are going to be accepted into this program are following the guidelines that are going to be set out. But because it was dismissed on the duty, the lack of duty, and the immunity, we never conducted any discovery. But I think it's clear that what the city was doing was not acting as a general contractor, not ensuring safety of anybody on the project. In fact, in the record, there's nothing that suggests the city would be out there at the time the work is being performed. What the city did under the record that's created in this case is went out there to ensure that